OPINION
{¶ 1} Kevin J. O'Brien, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court overruled appellant's objections to the magistrate's June 25, 2004 decision.
 {¶ 2} Appellant and Carol Hamilton O'Brien, plaintiff-appellee, were married September 3, 1983. Three children were born as issue of the marriage: Patrick, born January 21, 1985; Eamon, born June 13, 1988; and Timothy, born July 29, 1990. The *Page 2 
parties divorced on June 19, 1997. Appellee received custody of the children, and appellant was granted parenting time consistent with Loc.R. 27 of the Franklin County Court of Common Pleas, Division of Domestic Relations.
 {¶ 3} In February 2000, Patrick moved into appellant's home and emancipated on June 3, 2003. Further, for a period, Eamon lived alternatively with appellant and appellee.
 {¶ 4} The following motions were filed: (1) appellant's May 31, 2000 motion to modify parental rights and responsibilities; (2) appellee's July 5, 2000 motion to modify child support; (3) appellee's August 24, 2001 motion for contempt; (4) appellee's January 10, 2002 motion to compel; (5) the guardian ad litem's ("GAL's") February 5, 2002 motion for a final order of fees; and (6) appellant's July 9, 2002 motion prohibiting psychological treatment. The above motions were heard before a magistrate, and, on March 4, 2004, the magistrate issued a decision, which had an effective date of March 1, 2004. The magistrate later filed a decision with findings of fact and conclusions of law on June 25, 2004, which had the same effective date of March 1, 2004. The magistrate found that there had been changes in the circumstances of both the parents and the children, including that Eamon and Patrick had spent more time with appellant than had been previously ordered. However, the magistrate concluded that it was not in Eamon's best interest to reside with appellant. Therefore, the magistrate concluded: (1) appellant's motion to modify parental rights and responsibilities should be denied, with appellee remaining the custodial parent; (2) the Franklin County Child Support Enforcement Agency should recalculate appellant's support obligation and release any excess escrowed amounts to appellant; and (3) appellant was guilty of contempt for violating court orders regarding parenting time; therefore, appellee's two separate contempt *Page 3 
motions were well-taken, with four-days jail time suspended upon appellant's payment of attorney fees.
 {¶ 5} On July 9, 2004, appellant filed objections to the magistrate's decision, which were later dismissed due to appellant's failure to file a transcript. On appeal to this court in O'Brien v. O'Brien, Franklin App. No. 04AP-1157, 2005-Ohio-3101, we reversed the judgment of the trial court and remanded the matter for consideration of appellant's objections to the magistrate's decision.
 {¶ 6} Eamon emancipated on June 13, 2006. Timothy continued to reside with appellee.
 {¶ 7} Upon remand, appellant filed the transcript from the magistrate's hearing and filed supplemental objections. On August 2, 2006, the trial court heard appellant's objections. On March 15, 2007, the trial court filed a judgment overruling appellant's objections. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] The Court erred in its child support order, with respect to the failure to order child support pursuant to a split custody arrangement between the parties.
 [II.] The Court erred in the allocation of parental rights and responsibilities with regard to Timothy O'Brien.
 [III.] The Court erred in finding Defendant-Appellant in contempt of court with respect to parenting time.
 {¶ 8} Appellant argues in his first assignment of error that the trial court erred in its determination of child support. In ordering child support, the trial court ordered different support amounts for four different periods: (1) May 1, 2000-August 30, 2001, when Patrick lived with appellant and Eamon and Timothy lived with appellee; (2) August 30, 2001-June 1, 2003, when Patrick and Eamon lived with appellant and Timothy lived with *Page 4 
appellee; (3) June 1, 2003-March 1, 2004, when Eamon lived with appellant and Timothy lived with appellee; and (4) March 1, 2004-present, when Eamon and Timothy lived with appellee.
 {¶ 9} Appellant's first argument with regard to the trial court's award of child support is that the trial court erroneously ended the third period of child support on March 1, 2004, when it should not have ended it until June 25, 2004. Appellant concedes that March 1, 2004 was the effective date indicated in the initial magistrate's decision but claims that the effective date should be the date the magistrate issued the subsequent decision with findings of fact and conclusions of law, which was June 25, 2004. Appellant maintains that the prior custody order, which indicated that Eamon could continue to live with appellant if he so wished, was not dissolved until this later date, and, thus, the third period should have ended June 25, 2004.
 {¶ 10} Issues of child support are reviewed under an abuse of discretion standard. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Likewise, it is well-established that trial courts have discretion in determining the effective date of an order to modify child support. Cox v. Cox (Apr. 8, 1997), Franklin App. No. 96APF07-889. The term "abuse of discretion" connotes that the court's decision is unreasonable, arbitrary, or unconscionable; an abuse of discretion constitutes more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Here, we find the trial court did not abuse its discretion when it ended child support for the third period on March 1, 2004. The effective date of the magistrate's decision was March 1, 2004. Although appellant contends that the prior court order, which indicated that Eamon could continue to live with appellant if he so wished, was not *Page 5 
dissolved until the magistrate's June 25, 2004 decision, the prior order was actually dissolved as of the magistrate's March 4, 2004 decision. That findings of fact and conclusions of law were requested has no bearing on the effective date of that decision. The June 25, 2004 decision merely added further explanation for the March 4, 2004 decision and did not alter it substantively. Therefore, this argument is without merit.
 {¶ 12} Appellant's second argument is that the trial court erred when it ordered him to pay child support to appellee for two children after March 1, 2004, because Eamon continued to live with him after the magistrate's decision until his emancipation on June 13, 2006, and it was clear to both parties that he would do so, despite the magistrate's decision. In addressing this issue in its judgment, the trial court found that, although it was evident that Eamon resided with appellant during the pendency of the action before the magistrate, the court was without new, credible, or uncontested evidence that Eamon resided with appellant after the March 2004 magistrate's decision. The hearing before the magistrate took place on various dates from October 2002 until August 2003, but the trial court did not hear appellant's objections until August 2, 2006, and did not file its judgment until March 15, 2007. The trial court noted in its judgment the unfortunate circumstance that the matter had been pending for over two years without any further evidence having been submitted. At the objections hearing before the trial court in August 2006, appellant called no witnesses and offered no new evidence, despite that a trial court is permitted to accept additional evidence under Civ.R. 53(D)(4)(b) and (d) when ruling on a party's objections. Thus, having only the transcript of the proceedings before the magistrate, the trial court had no evidence before it to demonstrate that Eamon lived with appellant from March 2004 until June 2006. *Page 6 
 {¶ 13} Further, appellant's contention that Eamon had been living with him since the magistrate's decision was not uncontested. Although appellant points to appellee's February 2006 motion seeking immediate physical possession of Eamon as demonstrating that Eamon had been residing with him, the motion does not concede that Eamon was living continuously with appellant and does not indicate how long Eamon had been residing with appellant. Importantly, at the objections hearing before the trial court, appellee specifically contested the fact that Eamon had been living with appellant since March 2004, and appellee similarly contests the same in her appellate brief. Therefore, similar to the trial court, this court is without evidence to sustain appellant's argument. Therefore, appellant's first assignment of error is overruled.
 {¶ 14} Appellant argues in his second assignment of error that the trial court erred in the allocation of parental rights and responsibilities with regard to Timothy O'Brien. Appellant contends that the trial court awarded him, among other things, one evening of parenting time per week from 5:00 p.m. until 8:00 p.m., but improperly denied his request for one night of overnight parenting time per week. A trial court is vested with broad discretion to decide matters regarding the allocation of parental rights and responsibilities for the care of minor children. Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618. Therefore, a trial court's decision regarding child custody is subject to reversal only upon a showing of an abuse of discretion. Id.;Miller v. Miller (1988), 37 Ohio St.3d 71, 74. This is so because a trial court must have the discretion to do what is equitable based upon the particular facts and circumstances of each case. Booth, at 144, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. Additionally, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. *Page 7 
 {¶ 15} In making a determination that modification of visitation is in the best interest of the child, a trial court must consider the factors set forth in R.C. 3109.051(D). Appellant agrees with the trial court's conclusion that only the following factors apply to the present case: (1) the prior interaction and interrelationships of the child with his parents, siblings, and other persons; (2) the geographic location of the residence of each parent and the distance between those residences; (3) the child's and the parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) the age of the child; (5) the child's adjustment to his home, school, and community; (6) the wishes and concerns of the child, as expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights; and (13) whether the residential parent has continuously and willfully denied the other parent's right to parenting time.
 {¶ 16} When a parent seeks to modify a previous visitation arrangement, it is that party who bears the burden of proof as to whether the prior arrangement was not in the best interests of the child. Bodine v. Bodine (1988), 38 Ohio App.3d 173, 175. In the present case, we find appellant failed to sustain his burden of proof. Our review of the record reveals that the trial court considered the relevant statutory factors indicated above, focusing heavily on several factors that persuaded it that an overnight mid-week visitation with appellant would not be in Timothy's best interest. With regard to the issue under this assignment of error, we find particularly compelling the trial court's discussion of factors ten and thirteen. As to factor ten, appellee testified that appellant had failed to *Page 8 
exercise his mid-week parenting time with the children since the parties' divorce. Further, although appellant is permitted to exercise parenting time on Friday nights, appellee testified that appellant often failed to exercise such. As to factor thirteen, appellee testified that, since the parties' divorce in 1997, appellant had not exercised his full parenting time with any of the children, including the full visitation time granted during summers, holidays, and birthdays, and never exercised any mid-week parenting time with Timothy. The trial court also pointed to evidence establishing that appellant failed to exercise any visitation with the children for an approximate five-week period from late 1999 to early 2000.
 {¶ 17} The above evidence supports the trial court's refusal to grant an overnight mid-week visitation to appellant. The trial court found that ordering an overnight visit, instead of the previously ordered mid-week visitation, would not serve Timothy's best interest, and we can find no abuse of discretion. Having not taken full advantage of the parenting time already granted over the course of the parties' divorce supports a finding that ordering even more visitation would not further Timothy's best interest. As the trial court pointed out, any failures of appellant to actually exercise these requested overnight visits would be "let-downs" and cause disappointment. Appellant's past actions have failed to instill any confidence that he would consistently follow through on the visitation he requests. Although Timothy has expressed a desire to spend more time with appellant, the current parenting-time schedule could provide that additional time if appellant would fully take advantage of such.
 {¶ 18} Appellant has pointed to evidence and testimony that would support the award of a mid-week overnight visitation. Two mental health practitioners who treated Timothy both indicated that appellant was a positive influence on his life and that Timothy *Page 9 
wanted to spend more time with appellant. Also, the parties live nearby, so travel between the homes would not be burdensome for Timothy. However, given our standard of review is abuse of discretion, we cannot find these factors are so overwhelming that the trial court's determination was arbitrary or unconscionable. We are mindful that, because "custody issues are some of the most difficult and agonizing decisions a trial judge must make," this court must not reverse such a decision absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418. For the above reasons, we find the trial court's determination denying appellant's request for an overnight mid-week visitation with Timothy was supported by a substantial amount of credible and competent evidence, and we can find no abuse of discretion. Therefore, appellant's second assignment of error is overruled.
 {¶ 19} Appellant argues in his third assignment of error that the trial court erred in finding him in contempt of court by failing to return the children to appellee at the conclusion of his parenting time on October 8, 2000, August 23, 2001, and August 24, 2001. An appellate court's standard of review of a trial court's contempt finding is an abuse of discretion. State ex rel. Celebrezze v. Gibbs (1991),60 Ohio St.3d 69. The three dates at issue in the present case generally encompass only two incidents. On October 8, 2000, the children (Eamon and Timothy) were to return to their mother's home after having a weekend visitation with appellant. After the time they were supposed to have returned to appellee's home, Eamon called his mother. Eamon wanted to spend the night at appellant's home, but appellee said no. Eamon got upset and kept asking why. Appellee presented an audiotape of the rest of the phone conversation, which begins while Eamon is apparently handing the phone to appellant: *Page 10 
 Appellant (in the background): You tell her, if Bill comes over here, I'm going to kick his fucking ass.
 Appellee: Did dad say if Bill comes over, he's going to have him arrested?
 Appellant: The kids want to stay here tonight.
 Appellee: Well, I'm sorry Kevin, they need to come home.
 Appellant: Well, no they don't. In fact, I'd be really surprised if the kids came back to your house at all.
 Appellee: Kevin, the boys need to come home —
 Appellant: No, they don't. In fact, I want you to make Eamon's homework available —
 Appellee: Kevin, we're going to come get —
 Appellant: I want to come over in a little while —
 Appellee: Kevin, we're going to come get them, okay?
 Appellant: No, you're not —
 Appellee: We're going to call the Worthington police —
 Appellant: If your pussy husband shows up in my yard, I'm going to beat his ass.
 Appellee: We're going to call the Worthington police —
 Appellant: Call `em. You call `em —
 Appellee: Okay, we're going to call the Worthington police —
 Appellant: Thank you. Bye.
After this verbal confrontation, appellee arrived with local police to retrieve the children. The police refused to intervene, and, after appellee went to appellant's front door and requested the children, appellant refused to give her the children. The children stayed the *Page 11 
night at appellant's home and returned to appellee's home the next morning to prepare for school. Appellee subsequently filed a motion for contempt.
 {¶ 20} With regard to August 23 and 24, 2001, appellant had been exercising part of his five-week summer parenting time with the children prior to these dates. Pursuant to Loc.R. 27 of the Franklin County Court of Common Pleas, Division of Domestic Relations, the children were to be returned to appellee seven days prior to the commencement of the school year, which would have been August 21, 2001. It is undisputed that appellee gave the children permission to stay with appellant until August 22, 2001, at which point appellee's husband, Bill Owen, picked up the children and took them home. Worthington police officers came to appellee's home the following day, indicating that appellant had reported to them that Owen had taken the children against their will. On August 23, 2001, Owen dropped off Eamon and Timothy at a doctor's office, and appellant was supposed to pick up the boys and drop them off at appellee's home but did not. Owen phoned appellant and asked where the boys were, but appellant refused to tell him their location and hung up the phone. Appellee obtained an order on August 24, 2001, requiring appellant to return the boys that evening, and appellant returned the children as ordered. Appellee subsequently filed a motion for contempt based upon these events.
 {¶ 21} With regard to both incidents, appellant relies upon this court's decision in Schottenstein v. Schottenstein (Dec. 12, 2000), Franklin App. No 00AP-285, to argue that Eamon was simply beyond the age and physical size of being forced out of appellant's house, grabbed, and placed in a car to be taken to appellee's home, if it was clearly against Eamon's wishes. Appellant asserts that it is clear that Eamon holds a strong opinion about the parenting arrangements between the parties, and appellant should not be required to use physical force or threats to convince an already emotionally upset *Page 12 
teenager to exercise parenting time. Appellant contends that, although these techniques may work on a four-or five-year-old, they are ineffective and have the potential to be harmful to a young, emotional teenager.
 {¶ 22} Relying upon Schottenstein, appellant argues that the age of the child should be considered in determining whether he was in contempt of court. In Schottenstein, we reversed the trial court's determination finding the mother in contempt for violating the visitation order with regard to the parents' three daughters, aged 14, 12, and 11 years old. The father contended the mother was interfering with his custody rights because the girls would not stay at his residence at the time specified in the order. After the trial court refused to interview the children with regard to the incident, the mother proffered the children's testimony, which generally indicated that the children, particularly the oldest daughter, did not like the parenting-time arrangement and willfully violated it on their own. The proffer indicated that the oldest daughter chose to go to her mother's house instead of staying with her father during his mid-week visitation time, and that the mother had taken the girls to the father's home at the commencement of the following week, but the girls refused to stay there. The trial court found the mother in contempt. The mother and the children appealed the determination.
 {¶ 23} On appeal, this court reversed the trial court's contempt finding. The issue, as framed by the majority in Schottenstein, was whether the three children should have been given an opportunity to voice their opinions with regard to the incident. This court then opined at length about the importance of the trial court's hearing the children's view of the situation and the importance of the trial court's explaining its decision to the children. Appellant claims that, of particular relevance to the present case, was our statement that: *Page 13 
 By the time a "child" reaches age fourteen, that "child" may be fully grown and physically mature. Parents simply cannot use the same means to control a fourteen-year-old that can be used with a preschooler.
Schottenstein, supra.
 {¶ 24} We do not find the overall gist of our holding inSchottenstein supportive of appellant's arguments. Initially, we note our holding in Schottenstein was that the trial court should have permitted the children to voice their opinions, and the trial court should have explained its decision to the children. Insofar as these tenets are not at issue in appellant's present assignment of error,Schottenstein is inapplicable.
 {¶ 25} As to the specific statement relied upon by appellant here and quoted above, as the trial court noted, the present situation differs markedly from those in Schottenstein. In the Schottenstein case, there existed a long history of the children's dislike of living with their father, fearing their father's temper, fearing their father's physical abuse, and complaining that their father traveled often and was not home. Although it appears from the present record that Eamon may have, at various times, been contemplating living with his father instead of his mother, there is no evidence of the sort of long-term, turbulent history in the present case, as in Schottenstein, that would suggest Eamon could not have returned to his mother's custody at the ordered times and subsequently sought a change in the custodial arrangements. The situation in Schottenstein suggested a crisis, an emergency, and a "boiling point," at which time the children simply could not tolerate the circumstances any longer.
 {¶ 26} More importantly, it was clear in Schottenstein that the oldest daughter had chosen to refuse to go to her father's home of her own volition without any apparent influence from her mother. There was also evidence proffered that the mother attempted *Page 14 
to get the children to go to their father's house but they refused. The mother demanded that the girls get into her car and go to their father's house. When they arrived at their father's house, their mother retrieved their luggage from the trunk and told them regardless of what they wanted, it was their father's time, and there was a court order to abide by. The oldest daughter agreed to talk to her father but refused to stay at his home, while the other daughters refused to get out of the vehicle. The mother then stayed in the father's driveway for at least 20 minutes while the mother attempted to convince the girls to get out of the car and go into their father's house. It was proffered that the girls would testify their mother did not influence their decision, and their mother had asked them daily to return to their father's home, but they refused to do so.
 {¶ 27} In the present case, the circumstances surrounding the contempts are less clear. There was no evidence presented that appellant urged the children to return to their mother's home at the specified times in either of the two incidents. The quoted telephone conversation suggests that appellant did not attempt to convince Eamon to return to his mother's residence on October 8, 2000. Instead, appellant's language indicates that he sought only to reinforce his son's defiance. Further, there is no evidence in the record that appellant took the extraordinary measures, as did the mother in Schottenstein, to persuade the children to return to their mother's home. Indeed, that appellant failed to attempt any influence over the children is supported by appellant's own admission that he could have forced Eamon to go to his mother's home, but he chose not to. We also note that, although appellant fails to acknowledge such, Timothy was also involved in the incidents leading to contempt, but appellant does not address Timothy, who was only ten and eleven years old at the pertinent times. In sum, the record before us is lacking as to any attempts by appellant to facilitate the ordered companionship time with the children's *Page 15 
mother, much less the extraordinary efforts displayed by the mother inSchottenstein. For these reasons, we find our holding inSchottenstein does not relieve appellant from the contempt findings. Therefore, appellant's third assignment of error is overruled.
 {¶ 28} Accordingly, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 BROWN, BRYANT, and FRENCH, JJ., concur. *Page 1